is not present this morning. He will be participating in deliberations and decision-making in all the cases that are before us this morning. As some of you may know, Judge Barron clerked for Justice Stevens, and he is in D.C. these few days participating in the memorial services for the judge. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is number 181767, United States v. Michael Roman Burghardt. Good morning, and may it please the Court. I'm Chrissy DeMazza, and I represent Michael Burghardt. I'd like to reserve three minutes for rebuttal. You may. Okay. Thank you. Despite some misgivings about the length of the sentence, the district court here felt bound by the ACC to sentence Mr. Burghardt to 15 years of incarceration. Mr. Burghardt's initial argument was that this sentence was improper because his convictions for the New Hampshire drug sale were not serious drug offenses. However, I was reading some supplemental briefing. There's a new issue now because of the Supreme Court's ruling under Heath. Why don't you start with that one? Since it affects the conviction, that's where I'd like to start. And then I'd like to move on to New Hampshire sale and reserve. Rest of my brief is the rest of the issues. Mr. Burghardt raises three issues related to Raheef. The first is that the indictment was invalid and did not give him fair notice of the charges against him because it omitted the knowledge of status element. The second two are related to the plea colloquy. The first is that his plea was not knowing, willing, or voluntary because he did not have notice of the actual charge against him. It was not given to him, explained by the judge, or anyone because no one at the time of his was an element. In fact, the case law was that knowledge of status was not an element. The second claim related to the plea is that there was not a sufficient factual basis. The government argues that the indictment claim was waived. I'd like to argue that waiver is improper. There's no intentional relinquishment of a known right here. At the time that Mr. Burghardt was pled guilty and was sentenced, it was a month ago. Assuming it's not waived, I think both sides agree that plain error analysis would be appropriate? Yes. And I believe that the plain error analysis is similar for the plea claim and the indictment claim, so I'm going to sort of group that together. And I think we can all work from the proposition that there's clear error given this new Supreme Court case. So let's work on three and four. Thank you. When it comes to prejudice, I do believe that there is a reasonable probability that Mr. Burghardt would not have pled had he known this element. This cyander element is very different from the other elements. Mr. Burghardt did not receive a benefit from the plea. There was no plea agreement. He was facing a very harsh mandatory minimum. And the elements that existed prior to a heath were more subject to objective proof. He's never gone to trial on any of his prior offenses before. Is that correct? He pled no low to a few and then was found guilty. After trial? There's no full... After trial? This relates to interpreting the Panther Law that I'm sorry I don't know very much about. But if you look at the PSR, there are a few where it says, you know, pled no low, and then it says found guilty after that. I don't, I'm sorry, but I didn't look into the full meaning of that. But this is a different kind of case than what he had faced before. You know, this 15 years mandatory is very, very different than anything he would have been confronting in state court. It's a federal charge. It's a whole different, and he knows that there's no benefit coming. He knows, obviously at the time of the plea they haven't found the ACC, but he knows that that's there. He knows that this 15 year mandatory minimum is over his head. So the premise here, if I understand the argument correctly, is that if we go back in time and postulate that at his plea proceeding or in the indictment, he had learned that the knowledge requirement, then he might have made a different calculation. That premise seems to assume that if he'd known the knowledge requirement, he would have thought he had a shot at winning on that. I don't think that it's that strong, and I like the language of the Supreme Court in Dominguez Benitez, where they talk about, it's not about whether the choice to go to trial would have been foolish. It's about whether this error would have had an effect on the defendant's assessment of his strategic position. Sure. So in other words, when his strategic position, it seems to me, is reduced now, what's the probability that I will get a better sentence or win? Okay. But I think, too, here, the interesting thing about this new added element is that the previous elements, if you take the general facts of the case that he did plead to, those elements were very easy for the government to meet. You've got the, he's found he's arrested with a gun in his pocket. He does have convictions. He's sort of an almost nothing to argue at trial position. Isn't that the same, though, with this, and maybe this gets down to clarifying what we're It seems to me that you need to know the facts that make your conduct unlawful, but you don't need to know that the law characterizes those facts as unlawful. So he would have to have known that he was convicted of a crime punishable by more than a year. His plea colloquy proceeding would have stressed the length that he could be sentenced for. So how does he get around that? So it's not just that he would have had to, he would have had to know that, but the assessment that he's making is kind of a step back because it's based on what could the government have proved that he knew and understood. And I think it's important to look at it from the perspective of a non-lawyer. You know, he's got these convictions, but what did they, what did he know that they meant? What did he think that they meant? The government has to prove that. Well, they don't do it. If he, if the record is that in pleading in the underlying state court action, he's standing there and the judge says, you're entering a plea. Are you aware that the potential penalty for this is 20 years? Yes. And you're pleading to this. Are you aware that's 10 to 20 years? Yes. How does he then establish that he wasn't aware that he was pleading guilty to an offense that was punishable by more than a year? Two points. The first is that we don't have that record right now. No, but we know it's the required procedure in the courts. But I don't, I don't think that we have that on the record, that we know that. You know, in Rahife, they didn't decide whether the error was harmless. They remanded. And I think that here we just don't know what he was told. It's not even a federal, the priors are not even federal proceedings where we can sort of say, oh, we, you know, we generally know what happens in the District of New Hampshire. So you'd like us to say, well, remand for the possibility that maybe in his underlying plea proceeding there was a Rule 16 error? I mean, I don't think you have to, it has to be specific. I think it can be, is there a reasonable probability that if he had known there was this opening, this idea that he could, that the government would have to prove knowledge and that he could contest what he knew and what he understood, that given this huge sentence looming over him, and given the fact that there was no plea offer, that there's no, there's no lesser way out, he's not getting any benefit by pleading guilty, that he very well may have taken the shot at like, okay, this is my chance. This is a way out. I now have something to argue. My lawyer can now say something that a jury could hook onto. A jury, he could, you know, and I don't think we have to specify what it is that the lawyer would have, would say at a trial. I think it's enough that this subjective knowledge element does, the government can be put to its proof on that in a way that's much different than the, were you holding a gun? And I think that given the severity of the sentence and given the fact that he was not getting a plea agreement, that it really is, I do think mens rea is really different. And there's, I point the court to Figueroa Ocasio and Gandia Maisonet, which were both First Circuit cases where the court talked about how making a mistake on the scienter element really does, is prejudicial and does have a substantial impact. I think that this is not, this is not a minor error. And you see some of that in the dissent of Rahif, where Judge Rio is talking about how this really does upend years of understanding. It's not just a sentencing factor that became an element, that this is really a truly an element that people understood was not part of these cases. And now it's become, not become, but it's newly recognized as part of these cases. And... So are you, are you seeking remand? Yeah, I think that the, both armies would result in remand. I think if the indictment claim would require dismissal of the indictment. And I think that the plea claims would require vacating the plea and remanding. And all of these issues about, you know, what could the trial arguments of it, you know, that can all be handled in district court in the first instance. Because here we simply have an indictment and a plea called plea that did not include this element. He made a choice that, he made a choice in a, in a setting where he was completely devoid of this information that mens rea was required. So at the district court level, if the court agreed with you, the court would vacate the plea? So I think that this, I think that this court can vacate the plea. What I'm saying is the district, what can happen then in the district court is sort of the whole new trial setting. You know, the government can go and find the documents that they would have introduced to the trial. There can be discovery and conversation about that. The same way that there would be in a felon in possession case that's indicted today. You know, any indicted going forward would certainly have the mens rea element and that would be part of the discussion between the government and the defense. But I would ask this court to either dismiss the indictment or to vacate the plea and then remand for, basically it would be sort of a new. It would still be necessary. New trial is not the right word, but like a whole, a reset on what, what would be the outcome, how would they get there? Would it be necessary for us to address the rest of the issues you raised? It would not. If, if there is a remand, it would not be necessary. Why, that, that's for me, because suppose you lose on remand, then wouldn't you want to have preserved these other issues? I think you can preserve them again. And bring them up again. Bring them up again and preserve them again. And a new panel then has to read all the briefs. I mean, I think you can reach the, I mean, it's, it's sort of, that's a, I think that it's technically moot because if his, if his conviction is gone, he doesn't have a sentence anymore. He's not under an ACC sentence. However, I do think that it is, it does seem likely that if he is, if he's either convicted at trial of the charges as they stand or if he doesn't resolve in a different way, that yes, the ACC issue would, would come up again, the New Hampshire sale issue. On the, on the other, on the ACC issue, am I correct that there's no New Hampshire guidance at all that indicates, there's no instance that anyone can point to in New Hampshire in which someone was prosecuted for an offer that was not bona fide? No one has pointed to that, but I don't think that we need to, because I think that this is not a case about the breadth of terms, but rather simply a case about the elements. And I think both parties agree that what the elements are that the defendant knowingly sold or offered an item and that item was a controlled drug. That doesn't include intent and ability. That intent and ability can't be read into the statute by prosecutorial choices. The statute simply does not require proof of those elements. Can't the New York courts read a similar statute in similar words and interpret that it included intent and ability? The Fifth and Eighth Amendment cases, sorry, the Fifth and Eighth Circuit cases? I think that those circuits are wrong, did not go into substantial analysis about what this, what it really means to hold this kind of conviction to be a predicate. And I also think that this court's decisions in Mulcairn and Bain indicate that in this circuit, making an offer without the intent and ability would not be an ACC record. Thank you. Thank you. Good morning. Mayor Pete of Courts, Seth Afrin for the United States. Turning to the Red High Heath issue, so we are dealing with the third and fourth prongs of plea error, as you pointed out, Judge Thompson, and an important feature of that is that the burden is on the defendant at that point. And to prove that there's a reasonable probability that they would not have gone forward with their plea had they known of this knowing element at the time of the change of plea hearing. So that's the question that we're dealing with. Judge Coyote, as you pointed out, what has to be proven now is that the defendant knew he was a felon. It is not required that he knew that his felon status stopped him from having a gun. So the question is, if he had known that the government had to prove that he was a felon, would he have not gone forward with the plea? Well, isn't the language, the government has to prove that he was a person who was convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Right, that's right, which is a felon. I know you gave a shorthand as well. Well, it's important, though. He doesn't need to know that that is a felon. That's right, one year. And so the key point is he served for some of these crimes, according to the PSR, more than one year in prison. What do you say to Mr. Ponce's point that, well, he would have challenged the accuracy, he might have challenged the accuracy of that in the PSR, but in the pre- decision before the Supreme Court handed down its case, he had no incentive to do so. So I don't think, I mean, as of now, right, so just focusing on burdens of proof and where we are, so I don't read anything in the reply brief or heard anything at this podium saying now he has something that he'd like to say about the travel of his state court cases that's relevant to this question of knowledge. And this would be the time to say it. At the third prong of the fourth prong of plainer review in the record, and it would go one way or the other. Here, because the issue has arisen post-district court proceedings, and technically, how do you supplement the record while you're before us? Well, there is a way to supplement the record, but I'm not even reading a supposition that, well, something happened, I'm telling you, I don't have the records, but I'm telling you now, Court of Appeals, something happened in my New Hampshire case that creates now a doubt in my mind about whether I knew these cases were punished for more than one year. I mean, that's not, he's not saying that. All he's saying, as I understood the argument I just heard, was I would have rolled the dice because I wouldn't have done any worse, and I don't think that's true. Don't we have some precedent in dealing with Shepard documents sometimes when this arises that as to one part or the other may have some burden of representing to the court or even attaching a Shepard document to their brief on appeal? They're correct, but, I mean, it still has to be, it can't possibly be that in this circumstance where the defendant, if the defendant said something possibly about some doubt about what those records show, but I don't think it's just go out and get the records where the defendant at the third front of plenary or fourth front hasn't said anything about what happened below in the collateral state court proceedings that cause us to think that there's some reasonable basis that he didn't know he was convicted. He actually served more than a year in New Hampshire State Prison. So to say that he didn't know, that's the point of the third and fourth prong is so that we don't spend time on these kinds of things. So it sounds like based upon this post-Supreme Court ruling, you're saying that in order to meet the burden under the third prong, they're going to have to come forward with affirmative, they will have to come forward with affirmative evidence that they weren't. At a minimum, they have to make an argument, at a minimum, they have to make an argument to you about why there's some basis to think that if we open the door to a whole bunch of other proceedings, that something will change here. They have to at least postulate something that suggests that that could happen. And that's a point of plenary, because we don't want to be reopening judgments that we're not objected to in the district court. We only want to do it if there's a reason to do it. And the opportunity to tell you why there's a reason to do it is at least in the appeal brief. And there was nothing here that's put forward to you to say, well, if we had gone forward to trial about whether I knew I was a felon, I would have said something about the inadequacy of the plea colloquy in my New Hampshire case, or I really didn't serve seven years in prison like the PSR says. But there's nothing. The only thing that's here is I would have rolled the dice because 15 years is what I was going to get no matter what, and so maybe I'd get a wrong juror who would not find me guilty. But I don't think that's right, because when you go to trial, there are attendant risks in that in every case. One, the judge hears a lot more about you than if you plead guilty, and that the court has said many times when comparing defendants who get lesser sentences with those who get more and that one chose to go to trial and one didn't is a reasonable basis for different sentences. Why? Because those defendants aren't similarly situated. So even if you don't have a plea agreement, when you accept responsibility and put yourself to sentencing, you are in a better position than if you don't. Well, what do you have to say about the knowing involuntary argument? It couldn't be knowing because he wasn't presented with a decision to admit. I think the standards here are all the same. I mean, none of this was raised. So all the plain error case law puts you in a position of having to look back at a proceeding that happened, take whatever's been told to you in the appeals brief and say, knowing what happened below, what I've been told now by the parties, is there a reasonable probability that a defendant or a defendant in this position would have made a different choice? And what I'm saying to you is there's nothing here that says this defendant would have made a different choice because the legal question is, did he know he was a felon? Yes, he knew he was a felon. Why do I say that? He served more than one year. Why do I say that? Because he did serve more than one year. Because he went through numerous change of plea colloquies in the state system and hasn't said to you that he has any belief that any of those things were unfair or didn't make him aware of the maximum penalties of his crime. So since nothing has been told to you, as you sit here doing third and fourth problem, plain error review, I think the court's job is to say, there was an error, as I admit in my reply brief, under the Supreme Court case law, it's a clear, obvious error on direct appeal. But the third and fourth problem have meaning and have teeth. The Supreme Court has said that. This court has said that. And the point is not to have useless do-overs. And this would be a useless do-over where the defendant did serve already, we know, served more than a year in prison for some of these offenses. I think that as to the indictment point, I do think it is waived. Challenges to the indictment after you plead are waived. I cited a First Circuit case that says exactly that. Now, what that First Circuit case says, it doesn't do very much because you're just left with the same issue on the plea colloquy claims. That's what we have here. The plea issue I think is the live one, but it's the same question. Is there a legal probability that if we sent this case back, that this defendant would have done anything different if he had the benefit of a heath? And I think the answer to that is no. What do you do about the New Hampshire offer? It does seem that just reading the face of the statute, the elements, that it's not clear as to whether New Hampshire, just on that language, would provide a prediction. So the government's argument as to offer, I think our stronger argument is New Hampshire doesn't include phony offers. But there's nothing that you can point to that says that. No, the best thing I can point to is that in the very next section of the New Hampshire statute, they made it criminal to make a phony offer when they say if you represent that something is a controlled substance that isn't, that's a separate crime. But doesn't that have some other elements that this one doesn't? The element is that you're representing, it's basically the phony powder situation. I offer you cocaine, I give you baking soda. Is that a crime? New Hampshire specifically makes that a crime. If it were a crime alone for me to falsely offer you the cocaine, you wouldn't need that second statute. Because that alone would be a crime. So I take that second statute to mean the first statute doesn't cover that scenario, which I would take to be a phony offer. I offer you something, I don't give it to you, I give you something else. And what's your proposed methodology if we're left with some ambiguity in the New Hampshire law? I disagree with my colleague there on where the legal imagination line of cases from the Supreme Court comes in. So as I understand that law, when she cites a case from this court where the statute was plain on its face. It included an exotic drug under Rhode Island law that was not included under federal law. And it just plainly did. And the government's argument in that case was well, Rhode Island has never prosecuted that. And this court correctly said it doesn't matter whether Rhode Island in fact has correctly prosecuted it. What matters is this statute is plain on its face to include that drug. That made the statute over broad. Here we have exactly what the legal imagination line of cases is going to. We have an ambiguous term. My colleague says offer includes phony offers. The government says no it doesn't. There's no New Hampshire case law on point. So the question is, and there's no case where that's been prosecuted. That favors the government's position that the idea that the statutory term expands to grab phony offers isn't right. Because New Hampshire has never evidenced that it leads the statute that way. And why I think my point about the other statute that I reference is important is that also goes to say no, New Hampshire doesn't think that the offering statute captures phony offers because for at least one kind of phony offer, they decided to create a whole separate statute for it. And so why would you do that? You would only do that because the main statute, the lead statute, the one we're dealing with doesn't cover it, but they still wanted to criminalize phony offers so they had to do it in another way. And that's why I think taking the legal imagination piece and then looking at New Hampshire's law in whole, which criminalizes thefts by deception separately, criminalizes providing  a phony offer. I think that's a major requirement to fix right into this court's decision in Wendleton that held that that was sufficient to be an ECCA involving offense. You seem to equate legal imagination with plausible resolution of ambiguity. In other words, we can have something that's ambiguous and it could go either way. We could, I suppose, label either side's interpretation as legal imagination. Right. But I think the difference here is the government has pointed to the kinds of materials that we look to do statutory interpretation, like another statute, two statutes that cover the same conduct. So it's a provision of statutory construction. When figuring out how to read one statute, if the same conduct is covered by another statute, you don't interpret that statute that the legislature would have made duplicative offenses. That's at least a canon of construction. The statute requires the knowing offer of a controlled substance. Those are the jury instructions for the offering offense. Seems to me that if I lie to you and say, do you want cocaine, and I don't intend to give you cocaine, I don't have cocaine, I'm not going to get cocaine, I haven't knowingly offered you a controlled substance. I've lied to you. And I don't think that's what the jury instruction captures. So my point is the legal imagination piece is it fits in when the government has traditional tools of statutory construction on its side in this case. But you still may say, well, but it's not a home run. Maybe it's a trip. They're not home yet. So what do you do then? Well, there's a little bit left on the other side. But the other side, nobody can point to any case where New Hampshire has ever applied this. Well, that's the final run. That's the last piece of the puzzle. Because, well, there's more on the government side. Maybe there's still a little ambiguity. But New Hampshire hasn't ever construed it that way. We're not going to say, well, this ambiguity that's sort of exotic is good enough for us to put it outside the ACCA. That's what the Supreme Court has counseled against. I think that's exactly the situation that we have here, where there's more on this side. Maybe there's some ambiguity left. But no cases actually do this. And so what the guidance is, is don't you federal court go out and say the state law needs that for ACCA purposes in that situation. So that's how I think it fits in. So I think that in closing, I think that on the plain error view, the conviction should be affirmed. And I think the district court correctly concluded that the New Hampshire drug offense is a offense involving distribution of controlled drugs. Thank you, Judge Thompson. I'd like to start with the government's contention that it would be a useless do-over to send this back. This is not a minor issue. This is a completely new, distinct, and different element. This is about ensuring that Mr. Burghardt's constitutional rights are preserved. But assuming that it's not, that it is a major issue and not a minor issue, you still have problems with prong three that continues to place the burden on the defendant to make the showing. I understand that. I disagree with the government that we have to present affirmative evidence, say, of Mr. Burghardt himself coming forward and saying, this is how I would have contested it, or this particular don't have knowledge. It's about saying that there's a reasonable probability that he would not have pled. The government keeps going back to the PSR. And at one point, the government said that he's served seven years. He hasn't served seven years. There's one case in question where the PSR suggests that he served more than a year in the initial sentencing, disregarding parole, disregarding... And that case has multiple counts. And then other cases were wrapped into it. And the government talks about what the plea colloquy would have said or what the documents would have said in state court. We don't have any idea what that would have said. And Mr. Burghardt deserves the chance to look at all that, to decide what he could have contested, because I understand it's our proof on plain error, but it would be the government's proof at trial. So he's assessing what would the government have been able to show about this new element that I didn't previously know about. And he deserves that chance, because this is a different type of element. So, Mr. Rossi, you're one of the more skillful people who appear before us regularly. Are you saying to us that if we were to remand, there is some plausible, realistic possibility that the record would be developed to show that your client wasn't told his prior conviction was punishable by more than a year, and that he didn't serve more than a year on account? I don't think we know. I mean, I don't know what the state court record says about his convictions. And I think that this is about him, Mr. Burghardt, deserving the ability and the chance to make that decision for himself. It's not unusual for defendants in these tricky situations to do a little bit of pre-argument or pre-briefing research and make offers of proof to us that there's something there. I just think that it's not part of the plain error standard. And I don't think that supplementing the record is as easy here. I think that he simply has to prove that this would have affected his calculus about whether or not he was going to plead to this offense with this potentially huge penalty. If I may say one quick thing about the New Hampshire offer argument. I would just like to say that what's important here is to sort of go back to basics on the categorical approach. What are the elements? The parties agree on the elements. Knowingly offered a controlled substance. This other offense about the phony substance, it's not just about offering, it's about sale as well. So New Hampshire just criminalized selling a real controlled substance and also selling what's represented to be a controlled substance. Those things need to be criminalized separately. It says nothing about whether the first statute, the statute at question here, whether those elements require intent and ability, and they simply do not. Thank you.